UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LEONARD SANDS,                          )
                                        )
            Petitioner,                 )
                                        )
v.                                      )        Nos. 3:18-CV-057; 3:14-CR-138
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Respondent.                 )

## MEMORANDUM OPINION

Petitioner Leonard Sands has filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, along with a *pro se* memorandum in support. [Docs. 1, 2].[1] The United States has responded in opposition to the motion. [Doc. 5].

Also before the Court is Petitioner's January 2019 *pro se* "Motion Pursuant to Fed. R. Civ. P. 60(b)(6) to Reopen Case to Vacate / Challenging the Collateral Review Process" [doc. 6], which the Court construes as a motion to amend the § 2255 petition. The United States has not responded to that later filing, and this case is now ripe for resolution.

The Court finds that the materials submitted, together with the record of the underlying criminal case, conclusively show that Petitioner is not entitled to relief on the claims asserted. Accordingly, the Court will decide this matter without an evidentiary hearing. *See* 28 U.S.C. § 2255(b). For the reasons discussed below, the Court finds that

---

[1] All docket references are to Case No. 3:18-CV-057 unless otherwise noted.

Petitioner's motion to vacate is without merit and, thus, will deny and dismiss the motion with prejudice. Petitioner's motion to amend will similarly be denied.

I.

*Background*

Petitioner and 16 co-defendants were named in a multi-count Second Superseding Indictment. Petitioner was charged in Count One (conspiracy to distribute 50 grams or more of methamphetamine, in violation of sections 841(a)(1), 841(b)(1)(A), and 846 of Title 21, United States Code) and Count Two (conspiracy to commit money laundering, in violation of sections 1956(a)(1)(A)(i), 1956(a)(i)(B)(1), and 1956(h) of Title 18, United States Code). [Case No. 3:14-CR-138, doc. 48].

The Honorable Thomas W. Phillips presided over Petitioner's two-day trial which commenced on November 17, 2015. As summarized by the Sixth Circuit Court of Appeals,

> At trial, the government introduced evidence suggesting that [Petitioner] was involved in a conspiracy to distribute methamphetamine in eastern Tennessee. The government's evidence indicated specifically that Eugene Loiselle, a co-conspirator, would ship the methamphetamine to Tennessee and that Sands, initially receiving methamphetamine on credit, would sell portions of it. Sands would return the proceeds of some of his sales to Loiselle, who would use them to buy more drugs and continue the enterprise. The government introduced testimony of Loiselle, other co-conspirators, and law enforcement officers working on the case. The government also introduced physical evidence, including photos of drug paraphernalia and narcotics found at Sands's house. During trial, DEA agent James Blanton testified, providing, among other things, a basic definition of the term money laundering. Sands was convicted on both charges, and he was sentenced to 324 months in prison and five years of supervised release.

[*Id.*, doc. 635, p. 1-2].

2

Judge Phillips sentenced Petitioner on March 23, 2016. [*Id.*, docs. 559-61]. Petitioner filed a timely notice of appeal the following day. [*Id.*, doc. 562]. The Sixth Circuit found Petitioner's appellate arguments to be without merit, and Judge Phillips's judgment and sentence were affirmed on March 31, 2017. [*Id.*, doc. 635]. Petitioner did not seek a writ of certiorari in the Supreme Court. Instead, he submitted his timely *pro se* § 2255 motion to vacate on February 12, 2018.[2]

Petitioner's § 2255 motion and supporting memorandum present an array of alleged shortcomings in trial counsel's performance. For ease of analysis, the Court has grouped those allegations into four claims:

1. Counsel's trial preparation was inadequate.

2. Counsel failed to raise certain objections.

3. Counsel did not adequately cross-examine two witnesses.

4. The attorney-client relationship was broken, leaving Petitioner unable to make an informed decision about whether to plead guilty or go to trial.

---

[2] Section 2255 provides for a one-year statute of limitation in which to file a motion to vacate a sentence. The limitation period generally runs from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f). Here, as noted, Petitioner's appeal was denied on March 31, 2017, and he did not seek a writ of certiorari in the Supreme Court although he had ninety days to do so. *See* 28 U.S.C. § 2101(c); Sup. Ct. R 13(1). Thus, according to the Court's calculations, the one-year time limit for filing a § 2255 motion in this case, adding the ninety days for filing a certiorari petition, expired on Monday, July 2, 2018. *See Clay v. United States*, 537 U.S. 522, 525 (2003) (explaining that a conviction affirmed on appeal becomes final when the ninety-day period for seeking a writ of certiorari expires).

3

II.

*Authority and Standards of Review*

A. <u>Section 2255 Generally</u>

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549-50 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion).  A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to secure collateral relief.  *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

"[A] pro se petitioner's section 2255 motion is entitled to a generous construction." *Fields v. United States*, 963 F.2d 105, 109 (6th Cir. 1992).  Nevertheless, a movant must set forth facts which entitle him to relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).  A motion that merely states general conclusions of law without substantiating its allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959).

4

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528; *see also Bousley*, 523 U.S. at 622-23. The hurdle a petitioner faces to overcome a procedural default is "intentionally high[,]…for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

## B. Ineffective Assistance of Counsel

When a § 2255 movant claims he was denied his Sixth Amendment right to effective assistance of counsel, a court must presume that counsel provided effective assistance, and the movant bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003) *see also Strickland v. Washington*, 466 U.S. 668, 689 (1984) (A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that. . . the challenged action might be considered sound trial strategy.") (internal citation omitted). To meet that burden, a movant must prove that specific acts or omissions by the attorney were deficient and that the attorney failed to provide "reasonably

5

effective assistance," which is measured by "prevailing professional norms." *Strickland*, 466 U.S. at 687-88. "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell,* 348 F.3d 177, 206 (6th Cir. 2003) (citing *Strickland*). A court's "role on habeas review is not to nitpick gratuitously counsel's performance." *Smith*, 348 F.3d at 206.

Next, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

## C. Timeliness

As alluded to above, a federal prisoner has one year in which to file a § 2255 motion, *including any amendments to the motion*. 28 U.S.C. § 2255(f); *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (citing to § 2255, ¶ 6—now § 2255(f)—as providing a "one-year limitation period in which to file a motion to vacate a federal conviction"); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("Any attempt to raise a new claim for relief in a Rule 15

motion to amend pleadings is subject to AEDPA's one-year statute of limitations."); *Oleson v. United States*, 27 F. App'x 566, 570 (6th Cir. 2001) ("Oleson's proposed amendment is subject to the § 2255 one-year statute of limitations affirmative defense.") (citing *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001)).

Section 2255(f)'s statute of limitations is not jurisdictional and may be tolled under limited, extraordinary circumstances. *Dunlap*, 250 F.3d at 1007. If equitable tolling does not save an untimely amendment, courts must then look to Federal Rule of Civil Procedure 15(c) to determine whether the proposed claim "relates back" to a timely, original pleading and is thus saved from being time barred by expiration of the statute of limitations. *Felix*, 545 U.S. at 656–57. In part, an amended claim relates back if it "ar[i]se[s] out of the [same] conduct, transaction, or occurrence set out or attempted to be set out in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

III.

*Discussion*

A. <u>Claim One</u>

Petitioner first argues that his attorney "did not adequately prepare for trial and had no strategy." [Doc. 2, p. 4]. Petitioner claims that counsel did not follow Petitioner's "suggestions and instructions," did not call any of Petitioner's desired witnesses "including someone to refute the money laundering charge," and "did not pursue any investigative work." [*Id.*, p. 4-5].

7

With one exception, Petitioner does not name the witnesses he wanted called nor does he explain how their testimony would have led to a different verdict.[3] Similarly, Petitioner does not specify any particular investigation or preparation that counsel failed to undertake.

"It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted). Petitioner's first claim fails because it is merely a collection of unsubstantiated allegations. *See Loum*, 262 F.2d at 867. He has not presented proof that specific acts or omissions by his attorney were deficient, nor has he demonstrated a reasonable probability that, but for counsel's purported errors, the result of this case would have been different. *Strickland*, 466 U.S. at 687-88, 694. Petitioner has not overcome the "strong presumption" that the challenged strategies were reasonable. *Id.* at 689; *see also United States v. Robson*, 307 F. App'x 907, 911 (6th Cir. 2009) (declining to review an ineffective assistance claim "because the record contains no indication of what an investigator might have discovered or how that information would have changed the outcome of the trial"); *Bentley v. Motley*, 248 F. App'x 713, 718 (6th Cir. 2007) ("[R]eview of counsel's strategy and trial tactics should be 'highly deferential' and should avoid second-guessing.") (citing and quoting *Strickland*, 466 U.S. at 689).

For these reasons, Petitioner's first claim will be denied.

---

[3] Petitioner's contention that a specified desired witness would have "refute[d] the money laundering charge" will be addressed below, in the Court's discussion of his motion to amend.

8

## B. <u>Claim Two</u>

Next, Petitioner argues that counsel was constitutionally ineffective by not objecting at two points during the trial.

First, Petitioner claims that counsel failed to object to the government's use of "the same picture of drugs to tell three different scenarios" in order "to infer to the jury that the Petitioner had 50 grams or more of drugs, when in reality there was less than 1/5 the amount." [Doc. 2, p. 7]. Presuming that this trial event occurred, Petitioner again has not presented proof that specific acts or omissions by his attorney were deficient, nor has he demonstrated a reasonable probability that, but for counsel's purported errors, the result of this case would have been different. *Strickland*, 466 U.S. at 687-88, 694. The proof of Petitioner's involvement in the methamphetamine conspiracy, and his responsibility for more than 50 grams of methamphetamine, was substantial. [Case No. 3:14-CR-138, doc. 594, p. 6, 8, 16, 19-20, 24, 41-42, 45, 48, 51, 54, 56-57, 69; doc. 598, p. 9, 23; doc. 618, p. 106, 122, 124; doc. 619, p. 155, 159, 165, 169, 177, 179-82]. The Sixth Circuit noted that there was sufficient evidence to sustain Petitioner's controlled substance conspiracy conviction. [*Id.*, doc. 635, p. 6]. In light of the weight of that evidence, Petitioner has failed to show that counsel's purported failure to object was professionally unreasonable. *See, e.g., Cobb v. Perini*, 832 F.2d 342, 347-48 (6th Cir. 1987) (noting the presumption that a failure to object "might be considered sound trial strategy") (citing and quoting *Strickland*, 466 U.S. at 689).

9

Petitioner also claims that counsel did not object that DEA Special Agent James Blanton "was not qualified to define the elements of money laundering," but in fact the attorney raised that very objection and the objection was overruled. [Case No. 3:14-CR-138, doc. 618, p. 17]. Petitioner's contention is simply without merit.

For these reasons, Claim Two will be denied.

## C. Claim Three

By his third claim, Petitioner contends that his attorney did not adequately cross-examine codefendant Mark Bullion and Special Agent Blanton. Counsel's cross-examination of Blanton was indeed brief [Case No. 3:14-CR-138, doc. 618, p. 26], whereas the cross-examination of Bullion spans six pages of the trial transcript and was, in the Court's view, vigorous. [*Id*, doc. 594, p. 29-34].

Regardless, Petitioner does not specify how either line of questioning was constitutionally deficient, nor has he shown how the outcome of his trial would have been different. When a movant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). For that reason, and because a court's review of cross-examination strategy "should be 'highly deferential' and should avoid second guessing," *Bentley*, 248 F. App'x at 718, Petitioner's third claim will be denied.

## D. Claim Four

By his fourth and final claim, Petitioner contends that his relationship with trial counsel suffered from conflict of interest, a complete breakdown in communication, "and

10

an irreconcilable conflict of defense tactics." [Doc. 2, p. 9]. This claim is largely shy on specifics, but Petitioner does offer two examples.

Petitioner suggests that his attorney and "other co-defendants [sic] lawyers, who were partners of" that attorney's law firm conspired against him. [*Id.*, p. 2, 5, 9]. According to Petitioner, unidentified codefendants told him early in the case that "the weight of the blame would be placed on the Petitioner." That is so, claims Petitioner, because the codefendants' lawyers, "who were partners with the Petitioner's defense counsel," knew "something that defense counsel was unwilling to share with the Petitioner."

The trial attorney in this case has practiced before this Court for many years. The Court takes judicial notice of the fact that the instant trial counsel only has *one* law partner. *See* Menefee & Brown, https://www.menefeebrown.com/attorneys/ (last visited May 28, 2020). The Court has carefully reviewed the docket sheet, and at no point was trial counsel's partner (singular) an attorney of record for any codefendant in this case. Petitioner's argument is factually unsupported and is frivolous.

Next, Petitioner contends that the attorney-client relationship was so broken that he was kept from making an "informed and realistic decision about his exposure in going to trial or pleading guilty[.]" [Doc. 2, p. 9]. According to Petitioner, counsel showed him only "a fraction of the total picture [thus] he could not make a [sic] informed and reasonable decision of accepting a plea or going to trial." [*Id.*]. This contention is wholly rebutted by Petitioner's averments: (1) that counsel's "only strategy was for him to cooperate, but

11

Petitioner maintained his innocence of this charge [sic] and went to trial; and (2) that Petitioner was "[d]etermined to go to trial and prove his innocence, in spite of counsel's efforts to get him to plea and cooperate." [*Id.*, p. 3, 5].

In sum, the factual assertions underlying Petitioner's fourth claim are contradicted by the record. Petitioner again has not presented proof that specific acts or omissions by his attorney were deficient, nor has he demonstrated a reasonable probability that, but for counsel's purported errors, the result of this case would have been different. *Strickland*, 466 U.S. at 687-88, 694. Claim Four will be denied.

## E. Motion to Amend

Lastly, the Court turns to Petitioner's January 2019 "Motion Pursuant to Fed. R. Civ. P. 60(b)(6) to Reopen Case to Vacate / Challenging the Collateral Review Process." [Doc. 6]. The sought-after relief, as described in the motion's caption, is unwarranted because the instant case has not yet been closed. There is therefore nothing to reopen.

However, due to Petitioner's attachment of an affidavit listing eight grounds for § 2255 relief [doc. 6, p. 9] and in deference to Petitioner's *pro se* status, the Court construes this filing as a motion to amend. "[S]ubstance, rather than labels, should control in legal proceedings[.]" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

The motion to amend is untimely and will be denied as such. As already alluded to, a federal prisoner has one year in which to file a § 2255 motion, including any amendments. 28 U.S.C. § 2255(f); *Mayle v. Felix*, 545 U.S. 644, 654, 662 (2005); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).

12

Section 2255(f)'s one-year statute of limitations on all petitions for collateral relief under § 2255 runs from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which an impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). These same provisions govern the timeliness of later-filed amendments. *Felix*, 545 U.S. at 654, 662.

Petitioner has failed to demonstrate that subsections (f)(2), (f)(3), or (f)(4) of § 2255 apply. Specifically, he has not established (or even argued): that any unlawful action by the government prevented him from timely presenting his amendment; that a pertinent right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or that facts exist affecting his case that could not have previously been discovered through due diligence.

Timeliness of Petitioner's proposed amendment therefore depends on whether he complied with subsection (f)(1) of § 2255, under which the amendment would have been due no later than one year after the date on which his judgment of conviction became final. As the Court observed in footnote two of this opinion, the Sixth Circuit Court of Appeals

denied Petitioner's appeal on March 31, 2017. Petitioner did not seek a writ of certiorari in the Supreme Court although he had ninety days to do so. *See* 28 U.S.C. § 2101(c); Sup. Ct. R 13(1). Thus, the one-year time limit for filing a § 2255 motion in this case, adding the ninety days for filing a certiorari petition, expired on Monday, July 2, 2018. *See Clay v. United States*, 537 U.S. 522, 525 (2003).

Petitioner's proposed amendment was submitted to the Court in January of 2019. His failure to submit the amendment until more than six months after the expiration of the statute of limitation means that the proposed collateral challenges therein are untimely under subsection (f)(1). As a result, the amendment will not be considered, absent tolling of the limitations period or relation back to a timely-filed claim in the original petition.

As mentioned above, section 2255(f)'s statute of limitations is not jurisdictional and may be tolled under limited, extraordinary circumstances. *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001). Equitable tolling is used sparingly, and a petitioner bears the burden of establishing that it applies to his case. *See Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). A movant must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010); *see also Jurado*, 337 F.3d at 643 ("Absent compelling equitable considerations, a court should not extend limitations by even a single day.") (citation omitted).

After review of the proposed amendment, the Court concludes that Petitioner has failed to put forth a single extraordinary circumstance justifying the failure to submit his proposed challenge within the window permitted by subsection (f)(1). *Compare Stovall v. United States*, Nos. 1:12-cv-377, 1:02-cr-32, 2013 WL 392467, at *3 (E.D. Tenn. Jan. 31, 2013) (rejecting request for equitable tolling of subsection (f)(1) in absence of evidence illustrating a diligent pursuit of the rights asserted), with *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) (granting request for equitable tolling where the petitioner pled facts indicating he had been separated from his legal materials for an extended period of time due to illness and multiple detention transfers). The instant Petitioner offers no justification at all for his late submission, and equitable tolling will not be applied.

Petitioner's last option to save the untimely amendment is the relation back doctrine. As noted, when an amendment is untimely, courts look to Federal Rule of Civil Procedure 15(c) to determine whether the proposed claim "relates back" to a timely, original pleading and is thus saved from being time barred by expiration of the statute of limitations. *Felix*, 545 U.S. at 656–57. An amended claim relates back to the filing of the original pleading if it "ar[i]se[s] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

The Supreme Court has rejected a broad reading of "conduct, transaction, or occurrence" in the context of post-conviction relief and explained that an amended petition will not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Felix*, 545 U.S. at 650.

15

In other words, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 658 (citations omitted).

Turning to the eight allegations of ineffective assistance listed in Petitioner's motion and affidavit, the Court first finds that the five of the eight claims are merely restatements of those raised in the initial petition. Those claims, as listed in Petitioner's affidavit, are:

> 1. Trial Counsel, [sic] was ineffective for failing to file a Motion to correct the erroneous factual profffer [sic].

> 3. Trial Counsel refuse [sic] to allow this petitioner to assist with his on [sic] defense.

> 4. Trial Counsel, [sic] allowed the Government to use the same drugs to tell (3) different stories, to make it same [sic] as if this petitioner had a larger quantity of drugs, then [sic] they actually had in this case.

> 5. Trial Counsel, [sic] refuse [sic] to call witnesses that this petitioner requested to testify on his behalf. These witnesses could have cleared this petitioner of the charges in this case.

> 7. Trial Counsel, [sic] didn't fully explain that this petitioner could receive (324) months of [sic] more.

[Doc. 6, p. 9]. These five claims are not new, have already been addressed herein, and will not be discussed further.

Next, two of the claims in Petitioner's affidavit pertain to his sentencing.

> 2. Trial Counsel, [sic] was ineffective for failing to object to the PSI regarding to this petitioner [sic] Criminal History and Base Offense Level.

> 8. Trial Counsel, [sic] was ineffective for failing to object to the erroneous/illegal enhancements.

[*Id.*]. These proposed claims, like the initial motion to vacate, argue that counsel was ineffective. That is not enough, however, to allow them to relate back to the original filing

16

because the newly alleged attorney missteps are not similar in type to the shortcomings asserted in the first pleading. *See, e.g., United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (finding that Rule 15 is not satisfied "merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance"). Petitioner's two proposed sentencing claims therefore do not relate back to his original petition and are untimely.

That leaves the sixth listed claim in Petitioner's affidavit. There, according to Petitioner, "Trial Counsel refuse [sic] to submit the copy of this petitioner [sic] check, that would have shown that she [sic] paid his light bill. This petitioner mother [sic] regularly paid this petitioner [sic] monthly bills. Mother was willing to testify to this." This proposed claim relates back to the original petition, as it fleshes out the initial claim that trial counsel was ineffective for not calling "someone to refute the money laundering charge." [Doc. 2, p. 5].

However, mere citation to the proposed testimony of Petitioner's mother is insufficient to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance … [and that] the challenged action might be considered sound trial strategy."). *Strickland v. Washington*, 466 U.S. 668, 689 (1984). As noted by the Sixth Circuit,

17

> There is sufficient evidence to sustain Sands's money-laundering-conspiracy conviction. Although, as the government seems to concede, the evidence supporting concealment money laundering is limited, there is sufficient evidence to sustain a promotion-money-laundering conviction. Loiselle testified at trial that he would lend Sands drugs for distribution and that Sands would use the proceeds of his sales to buy more drugs from Loiselle. This pattern of behavior is the "paradigmatic example" of promotion money laundering. Loiselle's testimony and the corroborating physical evidence introduced by the government are sufficient such that a reasonable jury could find Sands guilty of money-laundering conspiracy.

[Case No. 3:14-CR-138, doc. 635, p. 6] (internal citation omitted). In light of the strength of that evidence, the Court is not persuaded that proof of Petitioner's mother sometimes paying his monthly bills would have led to a different on promotion money laundering in this case, or that the testimony would even have been particularly relevant. "A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation and citation omitted).

For all these reasons, Petitioner's motion to amend [doc. 6] will be denied.

## F. <u>Motion for Discovery</u>

Lastly, the Court notes a motion pending, in Petitioner's criminal case, to compel trial counsel to turn over his case file. [Case No. 3:14-CR-138, doc. 669]. Therein, Petitioner argues that he needs the file in order to prepare unspecified claims of ineffective assistance for his § 2255 petition.

The motion was filed in May 2019, ten months after the statute of limitations had passed. The motion states that Petitioner first sought the case file in January 2019, more

18

than six months after the statute of limitations had passed.  The motion is an untimely fishing expedition and it will be denied.

## IV.

### *Conclusion*

For the reasons discussed in this Memorandum Opinion, Petitioner's § 2255 motion to vacate [Doc. 1] will be **DENIED** and **DISMISSED**.  His motion to amend [doc. 6] will be **DENIED**, as will the motion to compel pending in the criminal case. [Case No. 3:14-CR-138, doc. 669].

## V.

### *Certificate of Appealability*

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  *Id.*  The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong.  *Slack*, 529 U.S. at 484.  Having examined each of

Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:


_____
s/ Leon Jordan
United States District Judge